UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| SECURA INSURANCE COMPANY | * | CASE NO: 19-cv-1280 |
| | * | |
| VERSUS | * | JUDGE: _____ |
| | * | |
| ADVANCED SHIELDING TECHNOLOGIES, INC. | * * | MAGISTRATE: _____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SECURA INSURANCE COMPANY (hereinafter referred to as "Secura") files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

### I.  PARTIES

1. Plaintiff, Secura, is a Wisconsin Insurance Company with its principal place of business in Appleton, Wisconsin and is therefore a citizen of the State of Wisconsin.

2. Advanced Shielding Technologies, Inc. ("Advanced Shielding") is a foreign corporation organized in the laws in the State of Kentucky with its principal place of business at P.O. Box 202, West Point, Kentucky 40177, and whose registered agent for service of process is Steven Van Tilburg, 23355 L&N Turnpike, Building F, West Point, Kentucky 40177.  Advanced Shielding is, therefore, a citizen of the State of Kentucky.

### II.  JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §1332(a)(2) relating to a civil action between the citizens of the state and citizens subject to a foreign state.  This case involves claims in excess of $75,000.00, exclusive of interest and costs.

4. Jurisdiction is proper because there is complete diversity of citizenship between the parties, Secura is a citizen of Wisconsin and Advanced Shielding is a citizen of Kentucky. Venue is proper under 28 U.S.C. §1391(b)(2) because Advanced Shielding has been made a defendant in the United States District Court, Western District of Louisiana, Shreveport Division, in the case entitled *Jackie McCleary, et al versus Elekta, Inc., et al, Civil Action No. 5:19-cv-00052,* in which the plaintiff made claims against Advanced Shielding for alleged acts and omissions that occurred in Louisiana.

### III.  FACTS

#### A.  The McCleary Complaint

5. On or about January 15, 2019, Jackie McCleary, Sanford Bellows, Sharron Bellos, Mark Hays, Glenna Hays, Justin Kraker and Christy Kraker filed a wrongful death, personal injury and products liability action seeking compensatory damages against Elekta, Inc., Elekta Oncology Systems, Inc. (hereinafter referred to as "Elekta") and Advanced Shielding.  Plaintiff, Jackie McCleary, as the surviving spouse of deceased Steven McCleary, asserts a wrongful death and survival action.  Plaintiffs, husband and wives respectively, Sanford and Sharron Bellows, Mark and Glenna Hays and Justin and Christy Kraker assert personal injury actions, including loss of consortium claims by Sharron Bellows, Glenna Hays and Christy Kraker.

6. In the Complaint, plaintiffs alleged that Elekta manufactures and sells a cancer treatment machine known as a particle accelerator or "LINAC" ("machine"), which treats cancer with a beam of radiation.  According to the Complaint, in the summer of 2014, Overton Brooks purchased a new replacement machine from Elekta.  Plaintiff alleged that the contract required that Elekta remove the old machine and install the new one.  (Complaint, Paragraph 7, 8 and 9). Plaintiffs alleged that Elekta then contracted with Advanced Shielding to remove the old machine.

Plaintiffs alleged that Advanced Shielding agreed to furnish all necessary labor and equipment for removal and agreed to dispose of the old machine (Complaint, Paragraph 10). Apparently, the removal work was performed on or about June 28 and 29, 2014.

7. In the Complaint, Plaintiffs alleged that Advanced Shielding only sent one worker to remove the machine, and that Elekta and Advanced Shielding told Overton Brooks that its own personnel would be required for removal. Plaintiffs allege that Sanford Bellows, Mark Hays, Justin Kraker, and Steven McCleary were the Overton Brooks' employees assigned for the removal process. Plaintiffs allege that that Advanced Shielding and Elekta repeatedly assured them that there was no danger from radiation or any danger in removing the old machine. (Complaint, Paragraphs 15, 16, and 17). Plaintiffs allege that the removal took two days, and during that time, they were not provided with any safety gear or equipment by Elekta and Advanced Shielding. (Complaint, Paragraph 18). Plaintiff alleged that Advanced Shielding, after removal, took the old machine to a scrap yard where it is alleged that the machine set off radiation sensors, and the scrap yard refused to accept it. (Complaint, Paragraph 19). Plaintiffs allege that Elekta and Advanced Shielding represented that they had not been exposed to danger, and if there was radiation exposure, it was minimal. (Complaint, Paragraph 20).

8. Plaintiffs allege that Steven McCleary was diagnosed with leukemia and high-grade myelodysplastic syndrome on January 23, 2018, and that he died of acute myeloblastic leukemia on May 30, 2018. Plaintiffs allege that Steven McCleary's death was caused by exposure to radiation. Plaintiffs, Sanford Bellows, Mark Hays, and Justin Kraker allege bodily injuries allegedly due to radiation exposure. Plaintiff, Mark Hays alleges receiving a diagnosis on January 14, 2019 of ground glass nodules in his lungs. (Complaint, Paragraphs 21 and 22).

9. Plaintiffs allege eighteen acts of negligence on the part of Elekta and Advanced Shielding in the removal of the machine. The alleged negligent acts include, but are not limited to: failure to comply with federal and state regulations regarding the handling, transportation, and disposal of radioactive materials; failure to provide adequate labor, equipment, materials and supervision for removal and disposal of the machine; failure to safely decommission machine; failure to measure the level of radioactivity in the machine before removal; failure to provide a "cool off" period of time for radiation to dissipate after last usage of machine; failure to periodically measure the level of radioactivity during removal process; failure to provide appropriate safety equipment and gear; failure to have appropriate safety rules and guidelines on safe removal; failure to follow Elekta's/Advanced Shielding's own rules and guidelines for safe removal; exposure of Plaintiffs to radiation doses, which exceed federal and state rules and regulations and guidelines for safety; failure to meet industry safety standards for radiation and other toxic materials; misrepresentation regarding the safety of the machine, presence and levels of radioactivity, dose of radiation, and other material misrepresentations; failure to warn Plaintiffs of radiation and other toxic dangers in machine; failure to warn Plaintiffs of other known dangers within the machine, including beryllia dust and other toxic materials; failure to exercise reasonable care regarding the handling, transportation, and disposal of radioactive materials; creation of an unreasonable risk of harm and unreasonably dangerous condition; failure to remedy the unreasonable risk of harm and unreasonably dangerous condition, and to take proper precautionary actions; any other acts of negligence revealed in discovery. (Complaint, Pages 23 and 24).

10. Plaintiffs also allege that Elekta and Advanced Shielding negligently and/or intentionally made false and misleading statements to Plaintiffs regarding the doses of radiation and levels of radioactivity to which Plaintiffs were allegedly exposed. Plaintiffs assert that when

Elekta and Advanced Shielding learned Plaintiffs had been provided with false statement regarding the doses of radiation and levels of radioactivity, they withheld and failed to disclose this information to Plaintiffs. (Complaint, Paragraph 36).

11.     Plaintiffs allege Elekta is additionally liable under the Louisiana Products Liability Act, La. Rev. Stat. Ann. §§9:2800.51 to 9:2800.60 because Elekta is the manufacturer of the machine, and at the time the machine left the manufacturer within the control of Elekta, the machine was unreasonably dangerous to reasonably foreseeable users. Plaintiffs also allege violations of the Act because the machine did not have adequate warning or instruction as to the risks of induced radiation and other toxic materials, how to properly and safely decommission and dismantle the machine, and other attendant injuries and risks that could and did thereby occur. (Complaint, Paragraph 25).

### B.     The Secura Insurance Policies

12.     Secura issued Advanced Shielding a Commercial General Liability Policy (CP 3214824), effective October 8, 2013 through October 8, 2014.  The policy carries $1,000,000 per occurrence liability limits, and is subject to a $500 property damage and bodily injury deductible. Secura also issued Advanced Shielding a Commercial Umbrella Policy (CU 3214826), effective October 8, 2013 through October 8, 2014. This policy carried $1,000,000 per occurrence liability limits, subject to a $10,000 retained limit. The relevant policy provisions, exclusions, and conditions are excerpted and quoted below.

#### 1.     The Secura Primary Policy

13.     In **CG 00 01 10 01, COMMERCIAL GENERAL LIABILITY COVERAGE FORM,** the policy states:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit"— .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period....

    c. "Bodily Injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured..., includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

14. There are relevant policy exclusions:

    2. **Exclusions**

This insurance does not apply to:

    a. **Expected Or Intended Injury**

"Bodily injury" or "property damage' expected or intended from the standpoint of the insured. This excluSion does not apply **to** "bodily

injury" resulting from the use of reasonable force to protect persons or property.

**f.     Pollution**

**(1)**   "Bodily injury" or "property damage" arising out of the actual, alleged or threated discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured....

\*\*\*

**(b)**   At or from any premises, site or' location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)**   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)**    Any insured; or

**(ii)**   Any person or organization for whom you may be legally responsible; or

**(d)**   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor….

\*\*\*

**(e)**   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or In any way respond to, or assess the effects of, "pollutants".

\* \* \*

15. The policy states Who Is An Insured:

   **SECTION II WHO IS AN INSURED**

   1. If you are designated in the Declarations as:

      \* \* \*

      d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors….

   2. Each of the following is also an insured:

      a. ...Your "employees", other than either your "executive officers"...or your managers...but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business…

16. **In SECTION V — DEFINITIONS** the following pertinent terms are defined as follows:

   2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

      \* \* \*

   13. Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

      \* \* \*

   15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

 **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed…

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

* * *

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…

**21.** "Your product":

 **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(a)** You;

    **(b)** Others trading under your name; or...

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products,

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

   **(2)** The providing of or failure to provide warnings or instructions

**22.** "Your work:

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** The providing of or failure to provide warnings or instructions.

17. There is an Endorsement to the policy, **CG 21 04 11 85,** which changes the policy:

**EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

### 2. The Secura Commercial Umbrella Liability Policy

18. The **BUSINESS UMBRELLA LIABILITY FORM,** CUP 4550 0501, provides:

**PART I-COVERAGE**

1. **Limit of Liability**

   **We** will pay **loss** in excess of the **primary** limit as listed in **Schedule A** or the **retained limit** (if not covered by **primary** but otherwise covered by this policy) because of

   Coverage **A-Bodily Injury**
   Coverage **B-Property Damage…**

   caused by an **occurrence** to which this policy applies and such injury or damage happening anywhere during the policy period.

   * * *

19. **PART I — COVERAGE** was amended by an endorsement, form CUE 1500 1001,

captioned

**BUSINESS UMBRELLA AMENDATORY ENDORSEMENT:**

This endorsement modifies insurance provided under the following:

BUSINESS UMBRELLA LIABILITY COVERAGE FORM

A. **Amendment Of PART I — COVERAGE**

The following paragraph 5. Known Injury or Damage is added to PART I — COVERAGE:

      5.      Known Injury or Damage

* * *

      b.      **Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured...includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the policy period.

20.      In **PART II-DEFINITIONS,** the policy defines the following:

    **4.**      **Bodily Injury** means bodily injury, sickness or disease sustained by a person, during the policy period, including death resulting from any of these at anytime.

* * *

    **8.**      **Loss** means sums which **you** become legally obligated to pay as compensatory damages for settlement or satisfaction of a claim or judgment....

    **9.**      **Occurrence**

    A.      With respect to Coverage **A-Bodily Injury** and Coverage **B-Property Damage, occurrence** means an accident including continuous or repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the **Insured** unless injury or damage results from use of reasonable force to protect persons or property.

* * *

    **11.**      **Primary Policy or Policies**

    A policy or policies including their renewals or replacements, which provide all of the coverages and limits specified in **Schedule A** of this policy.

    **12.**      **Products-Completed Operations Hazard**

      A.    **Products-completed operations hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

          (1)    Products that are still in **your** physical possession; or

          (2)    Work that has not yet been completed or abandoned.

**Products-completed operations hazard** also includes **Bodily Injury** and **Property Damage** that arises out of **your products** if the **Bodily injury** and **Property Damage** occurs after **you** have relinquished possession of those products and Products-Completed Operations Hazard has been redefined as such in the **primary policy(ies)** described in **Schedule A.**

      B.    **Your work** will be deemed completed at the earliest of the following times:

          (1)    When all of the work called for in **your** contract has been completed....

\* \* \*

          (3)    When that part of the work done at a Job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**16.**    **Retained Limit** is the dollar amount shown in the Declarations as the **Retained Limit,** This is the amount **you** are responsible for as part of any settlement or judgment not covered by any **primary** insurance (as described in **Schedule A)** but otherwise covered by this policy....

    **17.**     **SCHEDULE** A-is a list of **primary** coverages and limits which must be provided by policies, other than this policy, which afford liability coverage for **losses,** This policy will only provide excess coverage after the limits of such other policies have been exhausted.

    **19.**     **Your product** means:

        A.     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (1)     **You**;

            (2)     Others trading under **your** name; or…

        B.     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in A. and B. above...

    **21.**     **Your work** means:

        A.     Work or operations performed by **you** or on **your** behalf; and

        B.     Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in A. or B. above.

21.     (In CU 1500 1001, the **BUSINESS LIABILITY UMBRELLA FORM** was amended by the **BUSINESS UMBRELLA AMENDATORY ENDORSEMENT**, but the definition provisions cited above were not revised.)

In **PART IV-WHO IS AN INSURED** the policy reads:

>   **1.** **You** (the person or organization named in the Declarations) and...

There is an Endorsement to the policy, CUE 5086 0804, which changes the policy as follows:

POLLUTION EXCLUSION AMENDED

This Endorsement modifies insurance provided under the following:

BUSINESS UMBRELLA LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement,

It is agreed that Part III-Exclusions, 9 relating to the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants** is replaced by the following:

>   9.   This insurance does not apply:
>
>   >   (1)   to **bodily injury,** or **property damage,** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**
>   >
>   >   >   (a)   at or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured;**
>   >   >
>   >   >   (b)   at or from any premises, site or location which is or was at any time used by or for any **insured** or others for handling, storage, disposal, processing or treatment of waste
>   >   >
>   >   >   (c)   at any time arising out of the transportation, handling, storing, treating, disposal of or processing of pollutants by or for any **Insured** or any person or organization for whom

                    the name **insured** may be legally responsible.

    (d)    at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on behalf of any **insured's** are performing operations, if the pollutants are brought onto the premises, site or location in connection with such operations by such **insured,** contractor or subcontractor.

    (e)    at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants.**

                    * * *

    (4)    to any **bodily injury** or **property damage** covered by any pollution liability extension endorsement provided by any **primary policy.**

    (5)    to **personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

                    * * *

**Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

> **Pollutants** also includes any substances or materials that may be specifically identified in an underlying policy. The definition of **pollutants** applies whether or not the irritant or contaminant has any function in your business, operations, premises, site or location...

22. There is the following endorsement added to the policy in FORM CUE 5058 8808 which reads:

> **PRODUCTS-COMPLETED OPERATIONS EXCLUSION ENDORSEMENT**
>
> It is agreed that no coverage is provided by the policy for claims, **suits**, actions, or proceedings against any **Insured** arising out of the **products-completed operations hazard** as defined in the policy.

### IV.   CLAIMS AND DEFENSES

23. The Secura policies were in effect from October 8, 2013 through October 8, 2014. The McCleary Complaint does not comprehensively state the dates for all the alleged personal injuries because no dates given for the injuries of Bellows and Kraker. The dates given for discovery of personal injuries and/or death are for January 28, 2018 and May 30, 2018 (McCleary), and January 14, 2019 (Hays), which clearly fall outside of the Secura policy periods for coverage.

24. As shown above, the liability insuring agreements in the Secura policies state that only damages alleged to arise from "bodily injury" or "property damage" caused by an "occurrence" are covered. In the McCleary action, Plaintiffs allege negligence, negligent and intentional misrepresentations, and failure to disclose information regarding radiation and radioactivity in connection with the removal of the machine. These claims do not involve assertions of an "occurrence", as defined in the policies, so as to satisfy the requirement of the insuring agreements.

25. Additionally, the McCleary allegations trigger exclusions in the Secura policies which may apply to preclude coverage. The Secura policies contain pollution exclusions that apply

because Plaintiffs' injuries and the death of McCleary arose out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, and the alleged radiation exposure falls within the term "pollutants".

26. The Products-Completed Operations Exclusions contained in the policies also apply as the "bodily injury" is claimed to have arisen from completed work operations as defined under the policies.

27. The expected or intended injury exclusion may further preclude coverage for acts expected or intended from the standpoint of the insured due to the allegations of intentional misrepresentations.

28. Secura has agreed to defend Advanced Shielding in the McCleary action and is providing a defense pursuant to a reservation of rights to deny coverage.

29. Secura has pleaded each of the policy provisions and exclusions contained in the primary and umbrella policies that are implicated by the McCleary action, and reserves the right to amend its Complaint should it be shown through the course of discovery that additional policy provisions and exclusions are implicated, and exclude coverage

## V.     PRAYER

Plaintiff, Secura Insurance Company respectfully prays that this Court enter a Declaratory Judgment and find that the Secura Insurance policies do not provide coverage for the allegations raised against Advanced Shielding Technologies, Inc. in the *Jackie McCleary, et al versus Elektra, Inc., et al* action, and that there be judgment in favor of Secura Insurance Company, that Secura be found not to provide coverage to Advanced Shielding Technologies, Inc. and that the Court find that Secura owes no defense to Advanced Shielding Technologies, Inc.

Secura further prays for all general and equitable relief as this Court may be deemed appropriate and proper.

Respectfully submitted,

PREIS PLC

By: */s/John P. Guillory*
JULIE A. SCHEIB (#18426)
JOHN P. GUILLORY (#18240)
102 Versailles Blvd., Ste. 400
Post Office Drawer 94-C
Lafayette, Louisiana  70509
Telephone:  (337) 237-6062
Facsimile:   (337) 237-9129
E-mail:  jscheib@preisplc.com
             jguillory@preisplc.com
COUNSEL FOR SECURA
INSURANCE COMPANY